**Marquis & Aurbach**
CRAIG R. ANDERSON, ESQ.
Nevada Bar No. 6882
JOSHUA L. BENSON, ESQ.
Nevada Bar No. 10514
10001 Park Run Drive
Las Vegas, Nevada 89145
Telephone:  (702) 382-0711
Facsimile:  (702) 382-5816
canderson@marquisaurbach.com
jbenson@marquisaurbach.com
Attorneys for Defendant LVMPD,

# UNITES STATES DISTRICT COURT

## DISTRICT OF NEVADA

PETRA CARRILLO, individually, as Special
Administratrix of the Estate of IVAN
CARRILLO, and as the parent and natural
guardian of ARLEEN CARRILLO, AYLEEN
CARRILLO, AND JAYLEEN CARRILLO,

Plaintiffs,

vs.

LAS VEGAS METROPOLITAN POLICE
DEPARTMENT; OFFICER A. CARPENTER,
in his individual and official capacity; OFFICER
A. UBBENS, in his individual and official
capacity; DOES 1 through 10, inclusive; and
ROE ENTITIES 11 through 20, inclusive,

Defendants.

Case No.:     2:10-cv-02122-KJD-RJJ

## DEFENDANT LAS VEGAS METROPOLITAN POLICE DEPARTMENT'S MOTION TO DISMISS

Defendant, Las Vegas Metropolitan Police Department, by and through its attorneys of record, Marquis & Aurbach, hereby moves this Court to dismiss: (1) all claims brought under Nevada's Survival Statute that are properly asserted under Nevada's Wrongful Death Statute; (2) Plaintiffs' federal <u>Monell</u> claim against LVMPD; (3) Plaintiffs' state law negligent hiring, training and  supervision claims (if the Survival Actions continue); and (4) Plaintiffs' intentional

MARQUIS & AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

M&A:05166-461 1217978_1.DOC 12/29/2010 10:17 AM

inflection of emotional distress claim. This Motion is made and based on the pleadings and papers on file herein, as well as the memorandum of points and authorities attached hereto.

DATED this 29th day of December, 2010.

MARQUIS & AURBACH

By _____
CRAIG R. ANDERSON, ESQ.
Nevada Bar No. 6882
JOSHUA L. BENSON, ESQ.
Nevada Bar No. 10514
10001 Park Run Drive
Las Vegas, Nevada 89145
Attorneys for Defendant LVMPD

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION.

In this § 1983 action, Petra Carrillo, Arleen Carrillo, Ayleen Carrillo and Jayleen Carrillo (collectively "Plaintiffs") sued the Las Vegas Metropolitan Police Department ("LVMPD") *on their own behalf* for wrongful death and intentional infliction of emotional distress and *on behalf of* Ivan Carrillo, the Decedent, for constitutional violations, wrongful death, negligence, battery, negligent supervision, negligent hiring and intentional infliction of emotional distress, as a result of LVMPD officers performing a Pursuit Intervention Technique ("PIT maneuver") to stop Ivan Carrillo after he failed to pull his vehicle over and took police on a chase through Las Vegas.[1] LVMPD's motion seeks dismissal of (1) Plaintiffs' duplicative state law tort claims brought *on behalf of* the Decedent under Nevada Survival statute when the claims may only be maintained under Nevada's Wrongful Death Statute; (2) Plaintiffs' federal Monell claim, which fails to meet the minimum pleading standards under the Iqbal and Twombly standards; (3) Plaintiffs' negligent hiring and negligent supervision claims, which are barred by NRS § 41.032; and (4) Plaintiffs' intentional infliction of emotional distress claim because Plaintiffs neither witnessed

MARQUIS & AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

---

[1] LVMPD denies ever performing a PIT maneuver. For the purpose of the Motion to Dismiss, LVMPD accepts the allegation as true.

M&A:05166-461 1217978_1.DOC 12/29/2010 10:17 AM

the accident nor were anywhere near the accident. Accordingly, LVMPD seeks dismissal of Plaintiffs 2nd (federal <u>Monell</u> claim), 4th (battery), 6th (Negligent Training and Supervision), 7th (Negligent Hiring and Retention)[2], and 8th (Intentional Infliction of Emotional Distress) Claims for Relief.[3]

## II.   FACTS.

### A.   THE ALLEGED INCIDENT.

On May 19, 2010, Officer Lourenco pulled behind the Decedent and attempted to conduct a traffic stop.[4] The Decedent refused to stop and Officer Lourenco requested additional marked patrol units to assist with the traffic stop.[5] Soon, two additional LVMPD officers and a LVMPD helicopter began pursuit of the Decedent who refused to pull over.[6] During the course of the pursuit, LVMPD attempted to place spike strips to stop the Decedent and eventually performed a PIT maneuver to bring Decedent's car to a stop.[7] The PIT maneuver caused the Decedent to lose control of his vehicle and collide with other cars.[8] The Decedent died as a result of the accident.

The Decedent's wife and three children have asserted 7 claims for relief on behalf of the Decedent against LVMPD: (1) Violation of Civil Rights; (2) Violation of Civil Rights— Municipal liability; (3) Wrongful Death; (4) Battery; (5) Negligent Training and Supervision; (6) Negligent Hiring and Retention; and (7) Intentional Infliction of Emotional Distress.

---

[2] Plaintiffs' Complaint lists two claims as the "Sixth Claim for Relief." LVMPD's motion will refer to the Negligent Hiring and Retention claim, presently labeled as the second 6th claim for relief, as the 7th claim for relief and will refer to the intentional infliction of emotional distress claim, presently labeled as the 7th claim for relief, as Plaintiffs' 8th claim for relief.

[3] Similarly, Plaintiffs' 5th Claim for Relief (Negligence) should be dismissed because it is properly asserted under Nevada's wrongful death statute. However, the claim is only asserted against the officers and not LVMPD.

[4] Complaint at ¶ 13, on file at Docket No. 1.

[5] <u>See id.</u> at ¶ 14.

[6] <u>Id.</u> at ¶¶ 17-18.

[7] <u>Id.</u> at ¶¶ 20 & 22.

[8] <u>Id.</u> at ¶¶ 30-31.

MARQUIS & AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

M&A:05166-461 1217978_1.DOC 12/29/2010 10:17 AM

1    Additionally, Plaintiffs assert two claims on their own behalf: (1) wrongful death and (2)

2    Intentional Infliction of Emotional Distress.

3    **III.    LEGAL STANDARD.**

4            In considering a motion to dismiss for failure to state a claim under FRCP 12(b)(6), the

5    court must accept as true all material allegations in the complaint as well as all reasonable

6    inferences that my be drawn from such allegations.  LSO, Ltd. V. Stroh, 205 F.3d 1146, 1150

7    (9th Cir. 2000).   The allegations of the complaint also must be construed in the light most

8    favorable to the nonmoving party.  Shwarz v. United States, 234 F.3d 428, 435 (9th Cir. 2000).

9    The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the

10   complaint.  Navarro v. Jury of Block, 250 F.3d 729, 732 (9th Cir. 2001).

11           The United States Supreme Court recently addressed the minimum standards a complaint

12   must meet to withstand a motion to dismiss under FRCP 12(b)(6), when measured against the

13   pleading requirements set by FRCP 8(a)(2).   "While a complaint attacked by Rule 12(b)(6)

14   motion to dismiss does not need detailed factual allegations…a plaintiff is obligated to provide

15   the 'grounds' of his 'entitle[ment] to relief' [under Rule 8(a)(2)] requires more than labels and

16   conclusions, and a formulaic recitation of the elements of a cause of action will not do…"  Bell

17   Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007) (quoting FRCP

18   8; first set of original brackets in original).[9]  As a result, "[f]actual allegations must be enough to

19   raise a right to relief above the speculative level…on the assumption that all the allegations in the

20   complaint are true (even if doubtful in fact)."  Id.

21           To satisfy FRCP 8(a)(2), a plaintiff must plead "enough facts to state a claim to relief that

22   is plausible on its face."  Id. at 570.  "A claim has facial plausibility when the plaintiff pleads

23   factual content that allows the court to draw the reasonable inference that the defendant is liable

24   for the misconduct alleged."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).   "Where a

25   complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of

26   the line between possibility and plausibility of 'entitlement to relief.'"  Id.  While a court must

MARQUIS & AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

27

28

---

[9] The Court extended the pleading requirements articulated in Twombly, an anti trust case, to all cases. See Ashcroft v. Iqbal, ___ U.S.___, 129 S.Ct. 1937 (2009).

M&A:05166-461 1217978_1.DOC 12/29/2010 10:17 AM

1  accept all allegations as true, that tenant "is inapplicable to legal conclusions. Threadbare

2  recitals of the elements of a cause of action, supported by mere conclusory statements, do not

3  suffice." Id. Ultimately, Rule 8 "does not unlock the doors of discovery for a plaintiff armed

4  with nothing more than mere conclusions." Id. Dismissal is proper where there is either a "lack

5  of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal

6  theory." Balisteri v. Pacifica Police Department, 901 F.2d 696, 699 (9th Cir. 1990).

7  **IV.   LEGAL ARGUMENT.**

8       LVMPD is requesting dismissal of the following claims: (1) Plaintiffs' Survival Action

9  Claims brought by all Plaintiffs *on behalf of* the Decedent; (2) Plaintiff's federal law Monell

10  claim against LVMPD; (3) Plaintiffs' state law claims for negligent hiring, training and

11  supervision under NRS 41.032; and (4) Plaintiffs' intentional infliction of emotional distress

12  claim.

13       **A.   PLAINTIFFS' STATE LAW CLAIMS BROUGHT UNDER NEVADA'S SURVIVAL STATUTE MUST BE DISMISSED AS DUPLICATIVE OF PLAINTIFFS' WRONGFUL DEATH CLAIM.**

14

15       Plaintiffs cannot maintain both a wrongful death claim (3rd Claim for Relief) *on behalf of*

16  the Decedent and survival claims for battery (4th Claim for Relief), negligence (5th Claim for

17  Relief), negligent training and supervision (6th Claim for Relief), and negligent hiring and

18  retention (7th Claim for Relief)[10] *on behalf of* the Decedent that allegedly resulted in the

19  Decedent's death.  Nevada law mandates that when the same alleged "wrongful act or neglect"

20  causes both personal injury and death, once death occurs, the personal injury claims are

21  embraced in one suit for wrongful death.  NRS 41.100; see Alsenz v. Clark County School Dist.,

22  109 Nev. 1062, 1066, 864 P.2d 285, 287 (1993).

23       Historically, all claims held by an individual would be lost upon the death of an

24  individual.  The Nevada legislature enacted two statutes allowing a decedent's claims to survive

25  his death.  First, Nevada law provides for the "survival" of a cause of action for injuries suffered

26  by an individual who dies before judgment is rendered:

27  
28  _____

[10] Plaintiffs negligent hiring and retention claim is named "Sixth Claim for Relief," when it appears to be the Seventh.

MARQUIS & AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711  FAX: (702) 382-5816

M&A:05166-461 1217978_1.DOC 12/29/2010 10:17 AM

1        1.  Except as otherwise provided in this section and NRS 179A.230, no cause of
    action is lost by reason of death of any person, but may be maintained by…the

2        person's executor or administrator.

3    NRS 41.100(1).  However, as an important limitation, "[t]his subsection does not apply for the

4    cause of action of a decedent brought by his personal representative for his wrongful death."

5    NRS 41.100(3).

6           If a wrongful act or neglect causes the death of an individual, the claim must be asserted

7    under Nevada's Wrongful Death (NRS 41.085), not under Nevada's Survival Statute:

8        2.  When the death of any person, whether or not a minor, is caused by the
    ***wrongful act or neglect of another***, the heirs of the decedent and the personal

9        representatives of the decedent may each maintain an action for damages against
    the person who caused the death…

10   NRS 41.085(2) (emphasis added).  Simply, where the same "wrongful act or neglect" causes

11   both personal injury and death, once death occurs, the personal injury claims are embraced in

12   one suit for wrongful death.  NRS 41.100; see Alsenz v. Clark County School Dist., 109 Nev.

13   1062, 1066, 864 P.2d 285, 287 (1993); 2 Litigating Tort Cases § 26:4 (2010); Stein on Personal

14   Injury § 3:54.

15          In addressing the correlation between Nevada's Wrongful Death Statute and Nevada's

16   Survival Statute, the Nevada Supreme Court recognized that by its express terms, Nevada's

17   Survival Statute does not apply when the estate's representative sues for wrongful death.  NRS

18   41.100(3); Alsenz, 109 Nev. at 1066, 864 P.2d at 288.  In Alsenz, the Administrator brought

19   claims under Nevada's Wrongful Death Statute and under Nevada's Survival Statue *on behalf of*

20   *the decedent* after the decedent died when her car was swept away by flood waters.  Id.  In

21   dismissing the claims brought under Nevada's Survival Statue, the court stated that "[r]egardless

22   of the cause of action's legal name, it is undisputed that [plaintiff] filed the estate's claim to

23   recover for [decedent's] wrongful death."  Id.  Regardless of the cause of actions legal name,

24   "wrongful death actions must proceed under Nevada's wrongful death statute."  Id.  Allowing the

25   estate to recover damages for the wrongful act or neglect that caused damages under both the

26   Wrongful Death statute and Survival statute would result in double recovery.  Id.  "Statutory

27   interpretation does not allow for such an unreasonable proposition."  Id.

28

MARQUIS & AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

6

Courts throughout the country are in accord with Nevada's interpretation that a wrongful act or neglect that causes death may only proceed in a cause of action for wrongful death, and not under a survival statute. See Technisand, Inc. v. Melton, 898 N.E.2d 303 (Ind. 2008); Ala. Code § 6-5-462; Ind. Code § 34-9-3-1; Missouri Statutes § 537.020. In Mississippi, when "the same wrongful conduct causes personal injury and death, at the instant of death, the recovery for personal injury is embraced by the 'one suit' for wrongful death and is not actionable by the estate under the survival statute." Burley v. Douglas, 26 So.3d 1013, 1019 (Miss. 2009). In North Carolina, "[a]ny common law claim which is now encompassed by the wrongful death statute must be asserted under that statute." State Auto Ins. Co. v. Blind, 650 S.E.2d 25, 27-28 (N.C. App. 2007). Accordingly, when a negligent or wrongful act causes a decedent's injuries resulting in death, the plaintiff's remedy "lies only in a wrongful death claim." Id. at 29. In Blind, the court affirmed dismissal of plaintiff's negligence survivorship claim because it may only be maintained in a wrongful death cause of action. Id.

The Administrator's state law tort claims (4th, 5th, 6th, 7th, and 8th Claims for Relief) each arise from the alleged wrongful conduct and/or neglect resulting in the Decedent's death. The Administrator's wrongful death claim specifically acknowledges that "Defendants are each responsible for their willful actions and for the acts described in this Complaint." Docket #1 at ¶ 52. To allow the separate survival tort claims to move forward would require the Court to "tinker with" Nevada's Survival Statute—something the Nevada Court refused to do. See Alsenz, 109 Nev. at 1066, 864 P.2d at 288. Accordingly, the Plaintiffs' survival tort claims must be dismissed as they are properly set forth in the wrongful death cause of action.

**B.     PLAINTIFFS' MONELL CLAIM AGAINST LVMPD MUST BE DISMISSED FOR FAILURE TO MEET TWOMBLY AND IQBAL'S PLEADING STANDARD.**

Next, Plaintiffs failed to satisfy the Iqbal/Twombly standard for pleading a Monell claim—Plaintiffs' Second Claim for Relief asserting municipal liability. Originally, municipalities could not be sued under § 1983. However, the Supreme Court authorized suits against municipalities when a municipal policy is the cause of the unconstitutional actions taken by municipal employees. Monell v. Dept. of Social Services, 436 U.S. 658, 690–91 (1978).

M&A:05166-461 1217978_1.DOC 12/29/2010 10:17 AM

MARQUIS & AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS & AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1    Liability only exists where the unconstitutional action "implements or executes a policy

2    statement, ordinance, regulation, or decision officially adopted and promulgated" by municipal

3    officers, or where the constitutional deprivation is visited pursuant to governmental "custom"

4    even though such a "custom" has not received formal approval.  Monell v. Dept. of Social

5    Services, 436 U.S. 658, 690–91 (1978).    The Court defined "custom" as "persistent and

6    widespread discriminatory practices by state officials." Id. at 691 (citing Adickes v. S.H. Dress

7    & Co., 398 U.S. 144, 167-68 (1970)).  A single incident is insufficient to establish municipal

8    liability on the basis of a "custom." City of Oklahoma City v. Tuttle, 471 U.S. 808 (1985),

9    To overcome a motion to dismiss regarding municipal liability under § 1983 against

10    LVMPD (or officers in their official capacities), plaintiffs must plead:  (1) a violation of the

11    Plaintiffs' constitutional rights occurred; (2) the action of the Defendants was under color of law;

12    (3) the action was taken pursuant to a plan, policy or custom of the entity; and (4) the policy or

13    custom was the actual cause or moving force behind the alleged deprivation.  See Kentucky v.

14    Graham, 473 U.S. 159, 165 (1985); West v. Atkins, 487 U.S. 42 (1988); City of Canton v.

15    Harris, 489 U.S. 378 (1989); Davis v. City of Ellenberg, 869 F.2d 1230 (9th Cir. 1989).

16    Here, Plaintiff's pleading of a "policy or custom" is nothing than a "formulaic recitation

17    of the elements" of a Monell claim.  Plaintiffs only alleged the following:

18        43.    Upon information and belief, PIT maneuvers are included in the training
         of Metro officers and are specifically authorized by Metro.

19

20        44.    As such, PIT maneuvers are a custom, practice, and policy of Metro and
         its officers, despite their dangerous and potentially fatal application.

21        45.    Despite knowledge their pursuit was unnecessary and unreasonable given

22        the helicopter pursuit and spike strips, Carpenter and Ubbens' training and
         experience using Metro's customs, practices and policies led them to each
         perform a PIT maneuver.

23

24    Docket #1 at ¶¶ 43-45. These bare allegations lack the required factual content to overcome a

25    motion to dismiss.[11]  Merely alleging that "PIT maneuvers are a custom, practice, and policy of

26    Metro" is a conclusory allegations\ that is not to be accepted as true on a motion to dismiss.

27    ────────────────────
     [11] The Supreme Court explained that under FRCP 8(a), a plaintiff must support claims with factual

28    content. Iqbal, 129 S.Ct. at 1950-51 (applying the construction of Rule 8 in Twombly v. Bell Atlantic,
     550 U.S. 544 (2007), to conclude that the plaintiff had not "nudged his claims ... across the line from

M&A:05166-461 1217978_1.DOC 12/29/2010 10:17 AM

Moreover, a policy of Pit maneuvers is not unconstitutional—a fatal flaw to Plaintiffs' claim. Thus, the allegation that PIT maneuvers are included in LVMPD's training, authorized by LVMPD, and potentially dangerous fails to satisfy a required element of a Monell claim—that LVMPD promulgated an unconstitutional policy.  The U.S. Supreme Court in Scott v. Harris, 550 U.S. 372, 386, 127 S.Ct. 1769, 1779 (2007), held that PIT maneuvers do not violate the Fourth Amendment, even when it places the fleeing motorist at risk of serious injury or death. Accordingly, the fact that LVMPD trains its officers on the use of PIT maneuvers does not subject LVMPD to municipal liability.

Plaintiffs' final allegation claims the PIT maneuver was unnecessary and unreasonable because a helicopter was overhead and LVMPD was employing spike strips to stop the Decedent.[12]   This allegation fails to support a Monell claim for two reasons.   First, the classification of the maneuver being "unnecessary" and "unreasonable" is a conclusory allegation that is not accepted as true under Iqbal/Twombly.  Second, in essence, Plaintiffs argue that the Decedent could have been subdued by alternate methods.   The U.S. Supreme Court previously rejected a similar argument that police should have ceased pursuit and not performed a PIT maneuver:

> [w]e think police need not have taken that chance and hoped for the best. Whereas [the officer's] action-ramming [plaintiff] off the road-was *certain* to eliminate the risk that [plaintiff] posed to the public, ceasing pursuit was not. First of all, there would have been no way to convey convincingly to [plaintiff] that the chase was off, and that he was free to go. Had [plaintiff] looked in his rearview mirror and seen the police cars deactivate their flashing lights and turn around, he would have had no idea whether they were truly letting him get away, or simply devising a new strategy for capture. Perhaps the police knew a shortcut he didn't know, and would reappear down the road to intercept him; or perhaps they were setting up a roadblock in his path.

Id. at 385, 127 S.Ct. at 1779.  Despite options of backing off or setting up a road block, the officer was still permitted to take the *certain* action and ram the plaintiff off the road.  Id.

---

conceivable to plausible"); see also Twombly, 550 U.S. at 555 (complaint should contain more than a "formulaic recitation of the elements.").

[12]  Docket No. 1 at ¶ 45.

M&A:05166-461 1217978_1.DOC 12/29/2010 10:17 AM

1    In sum, accepting the following allegations as true—(1) LVMPD has a policy of PIT

2    maneuvers[13]; (2) LVMPD trains officers on the PIT maneuver; (3) a helicopter was assisting

3    pursuit; and (4) spike strips were being deployed—Plaintiffs have failed to adequately plead a

4    Monell claim.  Beyond the assertions that LVMPD has a policy of training LVMPD officers on

5    the PIT maneuver and asserting LVMPD had other alternatives, Plaintiffs give no additional

6    factual support for their claim.   Plaintiffs' pleading "stop[ped] short of the line between

7    possibility and plausibility" regarding municipal liability.  See e.g., Hutchison v. Metro. Gov't,

8    of Nashville and Davidson, County, 685 F.Supp. 2d 747, 751 (N.D. Tenn. February 5, 2010).

9    The U.S. Supreme Court approves of the PIT maneuver, whether or not other alternatives are

10   available.  Merely having a policy of a PIT maneuver cannot impose municipal liability.  Based

11   upon the above, Plaintiffs' 42 U.S.C. §1983 claims against LVMPD must be dismissed for

12   failing to adequately state a claim.

13   **C.    PLAINTIFFS' STATE LAW NEGLIGENT HIRING, TRAINING, AND
            SUPERVISION CLAIM AGAINST LVMPD MUST BE DISMISSED.**

14       In Plaintiffs' Sixth Claims for Relief, the Plaintiffs allege that Defendant LVMPD was

15   negligent in its hiring, training and/or supervision of its police officers.  Docket #1 at ¶ 72-84.

16   Nevada Revised Statute §41.032 sets forth exceptions to Nevada's general waiver of sovereign

17   immunity.   Pursuant to NRS 41.032(2), no action may be brought against a state officer or

18   employee or any state agency or political subdivision that is "[b]ased upon the exercise or

19   performance or the failure to exercise or perform a discretionary function or duty on the part of

20   the state or any of its agencies or political subdivisions or of any officer, employee or immune

21   contractor of any of these, whether or not the discretion involved is abused."   See NRS

22   41.032(2).

---

[13] Plaintiffs have not pled an unconstitutional custom.  To plead an unconstitutional custom, Plaintiffs
must allege that the Decedent's alleged unconstitutional injuries resulted from a practice that is "persistent
and widespread," as well as "so permanent and well settled as to constitute a 'custom or usage' with the
force of law."  Monell, 436 U.S. at 691.  Plaintiffs have presented no allegations that the actions were
anything but "random acts or isolated events[, which] are insufficient to establish custom."  Thompson v.
City of Los Angeles, 885 F.2d 1439, 1444 (9th Cir.1989).

MARQUIS & AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711  FAX: (702) 382-5816

M&A:05166-461 1217978_1.DOC 12/29/2010 10:17 AM

To determine whether immunity for a discretionary act applies, Nevada utilizes a two-part test. First, an act is entitled to discretionary immunity if the decision involved an element of individual judgment or choice. Martinez v. Maruszczak, 123 Nev. 433, 168 P.3d 720, 729 (2007). Second, the judgment must be "of the kind that the discretionary function exception was designed to shield," which includes actions "based on considerations of social, economic, or political policy." Id. at 727-29 (quotations omitted). The discretionary act exception was designed "to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." Id. at 729 (quotations omitted). "Thus, if the injury-producing conduct is an integral part of governmental policy-making or planning, if the imposition of liability might jeopardize the quality of the governmental process, or if the legislative or executive branches' power or responsibility will be usurped, immunity will likely attach under the second criteria." Id. Discretionary act immunity may protect decisions that all levels of government as long as the decisions "require analysis of government policy concerns." Id. at 729.

Nevada looks to federal decisional law on the Federal Tort Claims Act for guidance on what type of conduct discretionary immunity protects. Martinez, 168 P.3d at 727-28. The United States Court of Appeals for the Ninth Circuit and other circuits have held that "decisions relating to the hiring, training, and supervision of employees usually involve policy judgments of the type Congress intended to discretionary function exception to shield." Vickers v. United States, 228 F.3d 944, 950 (9th Cir. 2000) (citing cases).

Because Nevada looks to federal case law to determine the scope of discretionary immunity, and because federal case law consistently holds training and supervision or acts entitled to such immunity, LVMPD is entitled to discretionary immunity on this claim. See Neal-Lomax v. Las Vegas Metropolitan Police Dept., 574 F.Supp. 2d 1170, 1182 (D. Nev. 2008).

///

///

MARQUIS & AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

11

MARQUIS & AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

**D.   PLAINTIFFS' INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM MUST BE DISMISSED.**

Lastly, Plaintiffs' intentional infliction of emotional distress ("IIED") claim must be dismissed because Plaintiffs neither witnessed the accident nor were they near the accident—two essential elements for asserting an IIED claim.   In Nevada, a plaintiff must establish the following elements for an IIED claim: (1) that the defendant's conduct was extreme and outrageous; (2) that the defendant either intended or recklessly disregarded the causing of emotional distress; (3) that the plaintiff actually suffered severe or extreme emotional distress; and (4) that the defendant's conduct actually or proximately caused the distress.   C.A. Nelson v. City of Las Vegas, 99 Nev. 548, 555, 665 P.2d 1141, 1145 (1983).

A **third party** to the outrageous act may recover only if the third party **witnessed** the outrageous acts.   Id.   Moreover, there must be allegations (1) indicating that the officers intended or recklessly disregarded the causing of emotional distress to the third party and (2) that the conduct caused Plaintiffs physical injury or illness.   Id. at 552, 65 P.2d at 1143.   A claim must be dismissed if these elements are missing.   See id.

In the instant case, Plaintiffs' IIED claim must be dismissed because (1) there are no allegations that any Plaintiffs witnessed the accident; (2) there are no allegations that the officers intended or recklessly disregarded the causing of emotional distress to Plaintiffs; and (3) there are no allegations that LVMPD's actions caused Plaintiffs' any physical injury or illness—Plaintiffs' merely make the conclusory insufficient allegation that the actions caused emotional distress.   See Docket No. 1.   Accordingly, LVMPD respectfully requests the Court to dismiss Plaintiffs' IIED claim.

/ / /

/ / /

/ / /

M&A:05166-461 1217978_1.DOC 12/29/2010 10:17 AM

V.    **CONCLUSION.**

Based upon the above, the LVMPD respectfully requests that the Court take the following action:

(1)  Dismiss all state law claims arising from the same alleged wrong acts and neglect that allegedly led to the Decedent's death (i.e., Plaintiffs' 4th, 5th, 6th, 7th and 8th Claims for Relief);

(2) Dismiss Plaintiffs' 42 U.S.C. §1983 Monell claims against Defendant LVMPD (i.e., Plaintiffs' Second Cause of Action);

(3) Dismiss Plaintiffs' state law negligent hiring, training, and supervision claim pursuant to NRS 41.032 (if the state law survival action claims are not dismissed); and

(4)  Dismiss Plaintiffs' IIED claim.

Dated this 29th day of December, 2010.

MARQUIS & AURBACH

By _____
Craig R. Anderson, Esq.
Nevada Bar No. 6882
Joshua L. Benson, Esq.
Nevada Bar No. 10514
10001 Park Run Drive
Las Vegas, Nevada 89145
Attorneys for LVMPD

MARQUIS & AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

M&A:05166-461 1217978_1.DOC 12/29/2010 10:17 AM