UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

PETRA CARRILLO, individually, as Special )
Administratrix of the Estate of IVAN CARRILLO, )
and as parent and natural guardian of ARLEEN )
CARRILLO, AYLEEN CARRILLO, and )
JAYLEEN CARRILLO, )
                                                 )
        Plaintiffs,      )   Case No.  2:10-cv-02122-KJD-GWF
                                                 )
vs.                                 )   **ORDER**
                                                 )
LAS VEGAS METROPOLITAN POLICE )   **Motion to Compel (#84)**
DEPARTMENT, *et al.*, )
        Defendants. )
_____ )

       This matter is before the Court on Plaintiffs' Motion to Compel and to Extend Discovery Period (#84), filed on December 20, 2012; Defendant Las Vegas Metropolitan Police Department's ("LVMPD") Opposition to Motion to Compel (#88), filed on January 4, 2013; and Defendant Aaron Carpenter's Joinder to Defendant LVMPD's Opposition and Opposition to Motion to Compel (#90, #91), filed on January 7, 2013.  The Court conducted a hearing in this matter on January 29, 2013 during which most of the issues raised by Plaintiffs' motion were resolved.

       The one remaining issue is whether Defendant LVMPD should be required to produce its Office of Internal Affairs reports regarding the investigation of the incident that is the subject of this lawsuit.  Defendant LVMPD has asserted the official information privilege in regard to these documents which include: (1) a Las Vegas Metropolitan Police Department Memorandum, dated January 31, 2011; (2) Adjudication of Complaint, dated January 6-13, 2011; (3) an Investigative Report of Complaint, dated December 13, 2010; and (4) an Internal Affairs Disposition Report, dated December 22, 2012.  At the Court's direction, these documents were submitted for *in camera* review by the Court.

**BACKGROUND**

This case arises out of a police pursuit of a motor vehicle operated by Plaintiffs' decedent, Ivan Carrillo, on May 19, 2011. A citizen allegedly called the "911" dispatcher and reported that Mr. Carrillo's vehicle was being driven erratically. A motorcycle officer attempted to stop the vehicle, but Mr. Carrillo sped away. Other officers in patrol cars joined the pursuit and the police department's helicopter also responded. During the course of the pursuit, Officer Ubbens attempted a "PIT maneuver" in which the officer intentionally causes his vehicle to collide with the rear corner of the suspect's vehicle, thereby causing the suspect's vehicle to spin out of control and come to a stop. Officer Ubben's PIT maneuver was unsuccessful and Mr. Carrillo continued to speed away. Defendant Officer Aaron Carpenter's vehicle allegedly then made contact with Mr. Carrillo's vehicle. Mr. Carrillo lost control of the vehicle which crossed over into the opposite travel lane where it was struck by two other vehicles. Mr. Carrillo sustained fatal injuries in the collision. Defendant Aaron Carpenter was subsequently terminated by the Las Vegas Metropolitan Police for allegedly violating a superior officer's order to cease the pursuit of Mr. Carrillo's vehicle. Defendant Carpenter was also criminally prosecuted for reckless driving/manslaughter in regard to the subject incident, but was acquitted at trial.

Plaintiffs' Complaint (#1) alleges claims against Defendants LVMPD and/or Aaron Cooper for violation of the decedent's civil rights, including the use of excessive and lethal force in violation of the Fourth and Fourteenth Amendment, municipal liability against Defendant LVMPD by engaging in a custom, policy or practice of permitting officers to use the PIT maneuver despite its dangerous and potential fatal application, a claim for wrongful death under Nevada law, battery, negligence, negligent training and supervision, negligent hiring and retention, and intentional infliction of emotional distress.

Defendant Carpenter has disclosed Jeffrey A. Martin as his expert witness in this action on the issues relating to whether Defendant Carpenter was at fault in regard to the subject accident or violated LVMPD rules, policies or procedures in regard to the subject accident. Mr. Martin also served as Defendant Carpenter's expert during the criminal prosecution and also during arbitration proceedings relating to the termination of his employment with the LVMPD. In his July 26, 2012

expert report in this action, Mr. Martin states: "In forming my opinions in this case, I reviewed, studied, and considered materials that are specific to this case as well as materials of general circulation." *Defendant Carpenter's Opposition (#91), Exhibit C, Martin Report, pg. 3.* Mr. Martin then lists the "specific case materials I have reviewed to date ..." which include the LVMPD Office of Internal Affairs reports that Defendant LVMPD claims are protected from disclosure to Plaintiffs under the official information privilege. *Id.*

During his December 19, 2012 deposition in this case, Mr. Martin testified that in preparing for his deposition he reviewed the reports prepared "in this matter" and the testimony in the criminal trial. He also testified that he reviewed "most of - - probably not quite all, but most of the items listed in the Rule 26 report, with the exception of, if I made a mistake, and I actually listed documents that I did not rely on for my opinion in this case." *Defendant Carpenter's Opposition (#91), Exhibit B, Martin Deposition, pg. 9.* In regard to the Internal Affairs reports, Mr. Martin testified:

> I did review those briefly during the preparation for the criminal trial and in preparation for the arbitration.
>
> However, I have not looked at them since then. They have no material in them which I based my opinions, and I probably couldn't even remember the content at this point in time. I wish my memory were that good that I could.

*Martin Deposition, pg. 10.*

Defendant LVMPD represents that it has produced to Plaintiffs "its comprehensive 80-page investigation report (a copy of which it attached to its opposition), officer interview transcripts, witness interview transcripts, voluntary statements, accident diagrams, photographs, the names of all officers involved, toxicology records, 911 recordings, and radio traffic between officers. *Defendant LVMPD's Opposition (#88), pg. 2.* Defendant LVMPD asserts that it is necessary, however, "to assert a privilege over its IA file, which includes LVMPD findings, comments and recommendation surrounding officer discipline." *Id.*

During the hearing on this matter, the Court inquired as to how Mr. Martin came into possession of the Internal Affairs reports to which Defendant LVMPD asserts the privilege. Defense counsel informed the Court that the reports were probably provided to Defendant

1 Carpenter's union representatives during the termination proceedings, and the union, in turn,
2 provided the reports to Mr. Martin.

### DISCUSSION

Certain police department records may be protected from disclosure under the qualified "official information" privilege. *Kelly v. City of San Jose,* 114 F.R.D. 653, 667-668 (N.D.Cal. 1987), citing *Kerr v. Dist. Ct. for N.D.Cal.,* 511 F.2d 192, 198 (9th Cir. 1975). *See also Sanchez v. City of Santa Ana,* 936 F.2d 1027, 1033-34 (9th Cir. 1991) (*en banc* ) (federal common law recognizes a qualified privilege for official information). "To determine whether the information sought is privileged, courts must weigh the potential benefits of disclosure against the potential disadvantages. If the latter is greater, the privilege bars discovery." *Sanchez*, *supra*, citing Jepsen *v. Florida Bd. of Regents*, 610 F.2d 1379, 1384-85 (5th Cir. 1980).

In order for the court to weigh the potential benefits and disadvantages of disclosure, the party asserting the privilege is required to submit a declaration or affidavit under oath and penalty of perjury from the head of the department that has control over the information. *Boar Inc. v. County of Nye*, 2010 WL 5070888, *3 (D.Nev. 2010), citing *Kerr v. Dist. Ct. for N.D.Cal.,* 511 F.2d 192, 198 (9th Cir. 1975), *Miller v. Panucci*, 141 F.R.D. 292, 300 (C.D.Cal. 1992), and *Kelly v. City of San Jose*, 114 F.R.D. at 656. The declaration or affidavit must include: (1) an affirmation that the agency generated or collected the material in issue and has in fact maintained its confidentiality (if the agency has shared some or all of the material with other governmental agencies it must disclose their identity and describe the circumstances surrounding the disclosure, including steps taken to assure preservation of the confidentiality of the material), (2) a statement that the official has personally reviewed the material in question, (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer, (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interest, and (5) a projection of how much harm would be done to the threatened interests if the disclosure were made. *Id.*

. . .

Here, Defendant LVMPD has not submitted such a declaration or affidavit. Its assertion of the official information privilege therefore fails on this procedural requirement alone. Even absent the procedural defect in Defendants' assertion of the privilege, the circumstances in this case do not support its application to the subject documents.

*Kelly v. City of San Jose* states that the balancing test should be moderately pre-weighted in favor of disclosure based on the public policy that privileges should be narrowly construed and the policy supporting the enforcement of the civil rights statutes through civil actions filed by aggrieved private parties. 114 F.R.D. at 660-662. The court cited the non-exhaustive factors listed in *Frankenhauser v. Rizzo,* 59 F.R.D. 339 (E.D.Pa. 1973) that courts may consider in determining whether the competing interests, on balance, favor disclosure or protection of the information:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiff's case.

*Kelly,* 114 at 663.

The weight to be given to these factors depends on the circumstances of the particular case. For example, the government's interests in protecting the identities of confidential police informants, or maintaining confidentiality during an ongoing criminal investigation, are more likely to outweigh the plaintiff's interest in discovering all relevant information. The government's confidentiality interest is not as strong, however, when the events are long since past and there will be no further criminal prosecution or internal affairs follow-up arising out of the incident. *Kelly,* 114 F.R.D. at 662, citing *Spell v. McDaniel,* 591 F.Supp. 1090, 1119 (E.D.N.C. 1984). The police also have a legitimate interest in protecting internal law enforcement procedures that are not readily

1 accessible to those who might endanger or frustrate the police in the legitimate performance of their
2 duties. Where such procedures are relevant to the officer's conduct in the case at issue, however,
3 disclosure can generally be made under a well-crafted protective order that restricts the disclosure
4 of such information to the parties and/or their counsel.

5 *Kelly* noted that some courts have held that evaluative statements and opinions in internal
6 affairs reports are entitled to almost absolute protection from disclosure. The court, however,
7 questioned the reasoning underpinning this view:

> There are at least two problems with the reasoning that supports this view. One is that the premise that supports it (that investigating officers will be less forthright in expressing their opinions if there is a risk of disclosure) is empirically unsupported and very debatable. The other problem with this line of reasoning is that after it acknowledges the great importance of enforcing federal civil rights policies it *fails to articulate a reason* for deciding to ascribe less weight to that enforcement effort than to the unmeasured harm to government interests that might follow from disclosure of evaluative material in internal affairs files.
>
> Since privileges operate in derogation of the truth finding process, and since the policies that inform federal civil rights statutes are profoundly important, courts should not use empirically unsupported and debatable assumptions to rationalize shifting a burden of justification away from the party asserting privilege (where the burden of justification classically rests) and on to a plaintiff who is attempting simultaneously to enforce his rights and policies that the people, speaking through Constitutional amendments and federal statutes, have elevated to the highest levels of priority.

19 *Kelly,* 114 F.R.D. at 664.

20 In response to the assertion that disclosure will adversely affect the police department's
21 ability to conduct investigations and implement appropriate discipline or training, *Kelly* states that
22 it is, at least, equally valid to assert that the investigating and responding officers' knowledge that
23 their statements and opinions may be disclosed and scrutinized in a subsequent judicial proceeding
24 will encourage them to conduct thorough and honest investigations. *Id.* at 664-665.

25 Several federal district courts have agreed with *Kelly's* statement that evaluative statements
26 and opinions in internal affairs reports are not necessarily entitled to a higher level of protection.
27 *Soto v. City of Concord,* 162 F.R.D. 603, 612-614 (N.D.Cal. 1995); *Miller v. Pancucci,* 141 F.R.D.
28 292, 301-02 (C.D.Cal. 1992); *Chism v. County of San Bernadino,* 159 F.R.D. 531, 533-35

(C.D.Cal. 1994); *King v. Conde,* 121 F.R.D. 180, 192-193 (E.D.N.Y. 1988). In *Torres v. Kuzniasz,* 936 F.Supp. 1201, 1211-12 (D.N.J. 1996), the court stated that the distinction between factual versus evaluative information no longer has its former significance where a *"Monell* claim" is alleged because supervisory evaluative opinions contained in internal affairs reports are highly relevant to proving municipal liability under § 1983 and should therefore be discoverable. *King v. Conde,* 121 F.R.D. 180, 192-193 (E.D.N.Y. 1988) also states that internal affairs investigators' evaluations and opinions are not entitled to a high level of protection where there is no ongoing criminal or internal affairs investigation.

In this case, the Plaintiffs have asserted a *Monell* claim against Defendant LVMPD based on its alleged custom, policy or practice of permitting its police officers to perform the dangerous and potentially fatal PIT maneuver. *See Complaint (#1)*, paragraphs 42-50. Defendant LVMPD's findings, comments and recommendations regarding the discipline of Defendant Carpenter are therefore relevant to Plaintiffs' *Monell* claim. The internal affairs and criminal prosecutions arising out of the subject incident are also completed. Disclosure of the Internal Affairs reports to Plaintiffs' counsel will therefore not impair any other ongoing investigations. Finally, Defendant Carpenter's expert witness Mr. Martin has received and reviewed the Internal Affairs reports in regard to preparing his opinions in the related termination and criminal proceedings. Although Mr. Martin testified that the reports "have no material in them which I based my opinions," this does not make them irrelevant to his opinions.

## CONCLUSION

Based on the foregoing, Defendant LVMPD has not met its burden, procedurally or substantively, to show that the subject Internal Affairs reports should be protected from disclosure pursuant to the official information privilege. The Court will, however, enter a protective order that the Internal Affairs reports may not be disclosed by Plaintiffs to any third person who is not involved as a party, attorney, member of the attorney's staff or a witness in this litigation. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Compel and to Extend Discovery Period (#84) is **granted** in regard to the production of the subject Las Vegas Metropolitan Police

Department Office of Internal Affairs reports subject to the protective order that the Internal Affairs reports may not be disclosed by Plaintiffs to any third person who is not involved as a party, attorney, member of the attorney's staff or a witness in this litigation.

DATED this 14th day of February, 2013.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge