**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| PETRA CARRILLO, individually, as Special Administratrix of the Estate of IVAN CARRILLO, and as the parent and natural guardian of ARLEEN CARRILLO, AYLEEN CARRILLO, AND JAYLEEN CARRILLO,<br><br>Plaintiffs<br><br>vs.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT; OFFICER A. CARPENTER, in his individual and official capacity; OFFICER A. UBBENS, in his individual and official capacity; DOES 1 through 10, inclusive; and ROE ENTITIES 11 through 20, inclusive,<br><br>Defendants | Case Nos.:   2:10-cv-02122-JAD-GWF<br>                      2:11-cv-01122-JAD-GWF<br><br>**Order Granting Motions for Summary Judgment [Docs. 96 and 97], Granting Joinder to Motion for Summary Judgment [Doc. 98], and Denying Motion for Leave to Amend and for Joinder of Parties [Doc. 113]** |
| ROXANA CORREA, BRIANNA LATISHA CARRILLO and IVAN ANTHOANE CARRILLO, Plaintiffs, by their parent and legal guardian, ROXANA CORREA,<br><br>Plaintiffs<br><br>vs.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT, OFFICER ARON SAMUEL CARPENTER, in his individual and official capacity, OFFICER ANDREW CHARLES UBBENS, in his individual and official capacity, DOES 1 through 10, inclusive, ROE ENTITIES 11 through 20, and ROE SURETY COMPANY,<br><br>Defendants | |

1          These consolidated cases arise out of Ivan Carrillo's untimely death after he led police on
2   a high-speed chase through Las Vegas and died in the ensuing car crash.  Carrillo's wife Petra
3   Carrillo and his children with her ("the Carrillo plaintiffs"), along with Carrillo's children with
4   Roxana Correa ("the Correa plaintiffs"), bring this civil rights suit against the Las Vegas
5   Metropolitan Police Department and against former LVMPD officer Aron Carpenter.[1]  They
6   theorize that Carrillo's death was the result of Officer Carpenter's "unnecessary and
7   unreasonable" use of a pursuit intervention technique or precision immobilization technique
8   ("PIT"), a method sometimes employed by officers to stop a moving vehicle by ramming the
9   back of the vehicle.  Doc. 101 at 2; Doc. 102 at 2.
10         Plaintiffs' original complaints asserted claims for unlawful search and seizure and
11  unreasonable use of excessive and lethal force; deprivation of life and liberty without due
12  process; deprivation of society, love, and financial and emotional support; unconstitutional
13  policy, practice, and custom under *Monell*; wrongful death; battery; negligence; negligent
14  training and supervision; negligent hiring and retention; and intentional infliction of emotional
15  distress.  Doc. 1 at 4–9 in 2:10-cv-02122-JAD-GWF; Doc. 1 at 5–11 in 2:11-cv-01122-JAD-
16  GWF.  Voluntary dismissals and an August 2011 order by United States District Judge Kent J.
17  Dawson whittled Plaintiffs' claims down to a 42 U.S.C. § 1983 civil rights claim, the *Monell*
18  claim against LVMPD, and a wrongful death claim under NRS 41.085(2).  *See* Doc. 1; Doc. 34
19  at 7.  Judge Dawson's order also granted Officer Andrew Ubbens's motion to dismiss, which left
20  the LVMPD and Office Carpenter as the only remaining defendants.  *See* Doc. 1; Doc. 34 at 7.
21  After two transfers, this case was ultimately assigned to the undersigned on August 7, 2013.
22  Doc. 131.
23         LVMPD (Doc. 96) and Officer Carpenter (Docs. 97–98) now move for summary
24  judgment on all remaining claims.  The Carrillo Plaintiffs also ask for leave to amend their

---

[1] Roxana Correa was terminated as a party in an order issued October 4, 2012.  Doc. 81 at 2.  The order appointed Veronica Correa, the grandmother of Carrillo's children with Roxana Correa, as guardian ad litem of the Correa plaintiffs and substituted Veronica as guardian in this matter.  Doc. 81 at 2.  Though they are collectively referred to with their mother's name for purposes of this litigation, these children have their father's last name.  *See* Doc. 81 at 1.

complaint and to add the City of Las Vegas and Clark County as defendants on the allegation that LVMPD receives funding from these municipalities. Doc. 113. The Court held oral argument on December 13, 2013, and granted summary judgment on the record. The Court now memorializes its findings and conclusions in this order.

## BACKGROUND

On May 19, 2010, Officer Antonio Lourenco initiated a traffic stop on Carrillo after a citizen reported that Carrillo was drifting between lanes, straddling two lanes, randomly slamming on his brakes, and slumped over in his seat looking incoherent and confused. Officer Lourenco activated his lights and sirens to make a traffic stop, but Carrillo moved to the lane nearest the curb and continued traveling east on Carey Avenue. Carrillo continued traveling slowly until he reached the intersection of Carey Avenue and Nellis Boulevard. Officer Lourenco again sounded his sirens.

Carrillo made a sudden right turn on Nellis Boulevard, sped up, slammed on his brakes, made a sharp left turn, drove over the median, and headed north on Nellis. He picked up speed as he drove. Officer Lourenco followed Carrillo over the median, with lights and sirens on. Carrillo continued accelerating up to 60 miles per hour and oscillating back and forth. When he reached a construction zone, the driving area narrowed to one lane; Officer Lourenco dropped off and two LVMPD marked patrol cars entered the pursuit with lights and sirens activated.

Carrillo steered out of the congested construction traffic and—now traveling north in the southbound lanes on Nellis—into oncoming traffic. At one point, he pulled to the side of the road, but quickly pulled back out into oncoming southbound traffic on Nellis, making other drivers stop to avoid a collision. Eventually, he crossed back into the northbound lanes, cutting in front of another vehicle.

Two officers left the pursuit (while others continued) and drove ahead to lay a spike strip. As Carrillo approached the spike strip, he was driving without his headlights on. He swerved around the strip, using the emergency space on the lane nearest the shoulder, and continued evading the officers while traveling in excess of the speed limit. After continuing north on Nellis, Carrillo took a hard, fast, aggressive right turn onto Las Vegas Boulevard.

1   On Las Vegas Boulevard, Carrillo again crossed into oncoming traffic at speeds upwards
2   of 60 miles per hour.  LVMPD officers were pursuing with lights and sirens, trying to get
3   Carrillo to stop and to warn oncoming traffic.  As Carrillo proceeded north in the Las Vegas
4   Boulevard southbound lanes, a semi-trailer truck approached in the southbound lane and began
5   flashing his high beams.  Carrillo took a hard left turn onto Craig Road, but his excessive speed
6   and poor angle caused him to drive over a raised median that provided an access way for
7   pedestrians and into oncoming traffic on Craig Road as he completed his turn.  He was now
8   westbound on Craig Road and still speeding, as LVMPD officers continued following him.

9   When Carrillo reached the intersection of Lamb Boulevard and Craig Road, he slammed
10  on his brakes, his vehicle turned sideways, and he started sliding sideways toward drivers
11  stopped at the red light.  He nearly crashed into the civilian vehicle stopped at the intersection.
12  Officer Ubbens moved in to make an arrest or render aid.

13  But Carrillo regained control of his vehicle and sped onto Lamb Boulevard, where he
14  headed north in the southbound lanes, weaving between leaves.  Officer Carpenter then began
15  following Carrillo, who suddenly moved into Officer Carpenter's lane.  Officer Carpenter laid a
16  heavy brake, felt a small bump, and saw Carrillo return to his lane.  Officer Carpenter is unsure
17  whether the bump was Carrillo hitting the patrol car or whether his patrol car's ABS brakes
18  activated when he slammed on his own brakes, when Carrillo lost control of his vehicle and slid
19  sideways into oncoming traffic.  Carrillo was broadsided by another vehicle and died in the
20  accident.  An autopsy revealed that Carrillo had both amphetamines and methamphetamines in
21  his system.

## DISCUSSION

**A.   Defendants' Motions for Summary Judgment and Motion for Joinder**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c).  The plain language of Federal Rule of Civil Procedure 56(c) mandates judgment, after adequate time for discovery and on motion, against the party who fails to

4

1    establish existence of an element essential to his case and on which he will bear the burden of
2    proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).
3          "A trial court may only consider admissible evidence in ruling on a motion for summary
4    judgment." *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 1988) (citations omitted).
5    Authentication is a "condition precedent" to admissibility, satisfied by "evidence sufficient to
6    support a finding that the matter in question its proponent claims." *Id.* (quoting Fed. R. Evid.
7    9019(a)) (internal quotation marks omitted).  The Ninth Circuit has "repeatedly held that
8    unauthenticated documents cannot be considered in a motion for summary judgment." *Id.*
9    (citations omitted).  Documents authenticated through personal knowledge must be attached to
10   an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through
11   whom the exhibits could be admitted into evidence.  *Id.* at 773–74 (citations omitted).
12         LVMPD and Carpenter are entitled to summary judgment on Plaintiffs' claims because
13   these remaining Defendants have demonstrated the complete absence of any evidence to support
14   at least one element of each of Plaintiffs' claims.  In their opposition, Plaintiffs failed to
15   authenticate a single exhibit as required under *Orr*, which directly and adversely impacted their
16   ability to create the factual dispute necessary to get these claims to a jury.  The net result is that
17   there is no admissible evidence to support the crux of their factual and legal theory: that Officer
18   Carpenter executed a PIT maneuver against Carrillo.  There is also not a scintilla of evidence that
19   the Officer had an "intent to harm" Carrillo that was unrelated to the legitimate object of the
20   arrest.  *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 854 (1998).  Without such proof, Plaintiffs
21   cannot prevail on their civil rights, *Monell*, or wrongful death claims, and summary judgment is
22   appropriate on all of these remaining claims.  Docs. 1, 34.
23         Even if Plaintiffs had raised an issue of material fact to suggest that Officer Carpenter
24   employed the PIT maneuver when his vehicle and Carrillo's vehicle bumped, that procedure—in
25   the context of the uncontested circumstances of this case—would have been objectively
26   reasonable under the Supreme Court's opinion in *Scott v. Harris*, 550 U.S. 372, 381 (2007).  In
27   *Scott*, the Supreme Court adopted the "sensible rule" in PIT-maneuver cases that "[a] police
28   officer's attempt to terminate a dangerous high-speed car chase that threatens the lives of

1    innocent bystanders does not violate the Fourth Amendment, even when it places the fleeing
2    motorist at risk of serious injury or death.'  *Id.* at 386.  When determining whether the use of the
3    PIT maneuver to stop a high-speed chase was reasonable, the Court considered "the risk of
4    bodily harm that" the officer's "actions posed to" the fleeing suspect, who was rendered a
5    quadriplegic in the ensuing crash, "in light of the threat to the public that [the officer] was trying
6    to eliminate."  *Id.* at 383.  "Multiple police cars, with blue lights flashing and sirens blaring, had
7    been chasing [the suspect] for nearly 10 miles, but he ignored their warning to stop."  *Id.* at 384.
8    The Court concluded, "We have little difficulty in concluding it was reasonable for [the officer]
9    to take the action that he did . . . .  The car chase that respondent initiated in this case posed a
10   substantial and immediate risk of serious physical injury to others; no reasonable jury could
11   conclude otherwise.  [The officer's] attempt to terminate the chase by forcing respondent off the
12   road was reasonable, and [he] is entitled to summary judgment."  *Id.* at 384–86.
13         Carrillo's chase followed the *Scott* motorist's playbook: he accelerated through city
14   streets at higher-than-posted speeds, oscillating between lanes, cutting off other motorists, and
15   driving on the wrong side of the road while trailed by officers with lights and sirens blaring.
16   Carrillo's actions "posed a substantial and immediate risk of serious physical injury to others; no
17   reasonable jury could conclude otherwise."  *Id*. at 386.  Assuming that Officer Carpenter did
18   execute a PIT maneuver, this attempt to terminate the chase by forcing Carrillo "off the road was
19   reasonable," as a matter of controlling law under *Scott*, and he is entitled to summary judgment.
20   *Id.*
21         LVMPD is also entitled to summary judgment on Plaintiffs' *Monell* claim.  *See Monell v.*
22   *Dep't of Social Servs. of the City of N.Y.*, 436 U.S. 658, 690–91 (1978).  Only the Carrillo
23   Plaintiffs have an alleged a *Monell* claim, but they have failed to identify any evidence of a
24   constitutional violation or a policy, practice, or custom that was the moving force behind any
25   alleged constitutional deprivation.  *Oklahoma City v. Tuttle*, 471 U.S. 808, 819–20 (1985)
26   (quoting *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 694–95 (1978)).
27   Accordingly, summary judgment for the Defendants is appropriate.  *See Leatherman v. Tarrant*
28   *Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168–69 (1993) (writing that, in

*Monell* cases, "federal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later."[2]

The Court further finds good cause to grant Carpenter's Motion for Joinder. Doc. 98.

**B.     The Carrillo Plaintiffs' Motion for Leave to Amend and for Joinder of Parties**

The Carrillo Plaintiffs argue that amendment should be permitted to better reflect the claims remaining in this case and conform the complaint to evidence adduced in discovery. Doc. 113 at 2–3. In addition, they seek to add the City of Las Vegas and Clark County as new defendants because LVMPD "receives almost all of its funding" from the City and County. Doc. 113 at 3–4. The extended deadline for amending the pleadings and adding parties in this action—as stipulated by the parties and ordered by the Court—was June 28, 2012. Doc. 50 at 3. Plaintiffs' request to amend was filed 309 days after the amendment deadline expired and 53 days after the motions for summary judgment were filed.

After the deadline for amendment has passed, the movant must first successfully move the court to reopen the filing period. Courts may extend deadlines for (1) good cause shown and (2) "on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b). The Supreme Court established a test for excusable neglect in *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380 (1993). An enlargement of time may be granted based on (1) prejudice to the opposing party; (2) the length of delay and its potential impact on judicial proceedings; (3) the causes for the delay, including whether those reasons were within the moving party's reasonable control; and (4) the moving party's good faith. *Id.* at 395; *Stiller v. Costco Wholesale Corp.*, 3:09-CV-2473-GPC-BGS, 2013 WL 5417178, at *2–3 (S.D. Cal. Sept. 26, 2013). Though excusable neglect need not be entirely within the moving party's control, "inadvertence, ignorance of the rules, or mistakes

---

[2] The Court does not reach the state law discretionary immunity issue because Plaintiffs' various state claims have been dismissed. Doc. 34 at 5, 7.

7

construing the rules do not usually constitute excusable' neglect." *Id.* at 392.

Plaintiffs have not demonstrated good cause or excusable neglect to relieve them from the long-expired deadline. Permitting amendment would substantially prejudice Defendants because the entire case would be restarted and Defendants' motions for summary judgment would become moot. In addition, amendment would be futile because the case can be properly determined on the law at issue in the motions for summary judgment. *Forman v. Davis*, 371 U.S. 178, 182 (1962) (writing that courts may deny leave to amend where amendment would be futile). Accordingly, the Court denies Plaintiffs' untimely request to amend.

Amendment must also be denied because the addition of these municipal defendants would be futile under 42 U.S.C. § 1983, which provides that "every person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party." A viable *Monell* claim requires an enacted law, custom, or single decision made by a final policy maker as defined by state law. *Monell*, 436 U.S. 658; *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397 (1997); *Connick v. Thompson*, 131 S. Ct. 1350 (2011). The City of Las Vegas and Clark County, which the Carrillo Plaintiffs seek to add as defendants, are municipal governments that qualify as persons under Section 1983. 42 U.S.C. § 1983; *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403–04, 407–08, 415 (1997) (citations omitted). However, Plaintiffs have not shown that any city or county policy either directly or proximately caused injury to Carrillo. Without any such policy, custom, or decision, any claim against these proposed municipal defendants would be futile. *Forman v*, 371 U.S. at 182.

**CONCLUSION**

Accordingly, and for good cause shown,

It is hereby ORDERED that the Las Vegas Metropolitan Police Department's Motion for Summary Judgment **[Doc. 96]** and Aron Carpenter's Motion for Summary Judgment **[Doc. 97] are GRANTED**, leaving no remaining claims.

It is further ORDERED that Carpenter's Joinder to LVMPD's Motion for Summary Judgment **[Doc. 98] is GRANTED**.

It is further ORDERED that the Carrillo Plaintiffs' Motion for Leave to Amend the Complaint and for Joinder of Real Parties in Interest **[Doc. 113] is DENIED**.

DATED February 14, 2014.

_____
The Honorable Jennifer A. Dorsey
United States District Judge